UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

WILLIAM EMERY LeBLANC,

      Petitioner,

Case No. 1:02-cv-594

v.

Hon. Richard Alan Enslen

MARY BERGHUIS,

**OPINION**

      Respondent.
_____/

      This matter is before the Court to resolve Petitioner William Emery LeBlanc and Respondent Mary Berghuis' Objections to United States Magistrate Judge Ellen S. Carmody's Report and Recommendation of August 22, 2005. The Court reviews the Objections, the Report and pertinent parts of the record *de novo* in accordance with 28 U.S.C. § 636.

**BACKGROUND**

      This is a dread decision because it relates to the worst kind of dilemma in the criminal law–a minor who accuses an otherwise honorable man and stepfather of criminal sexual conduct wherein the accusation is uncorroborated by a direct eyewitness or physical evidence.[1] The testimony which convicted Defendant was that of the teenage victim as supported by the testimony of an adult friend (to whom she had reported the abuse) and a prosecution expert witness who bolstered the testimony by referring to general responses and statistical tendencies in sexual assault cases (which testimony

---

[1] The statement of the facts and law in this Opinion is necessarily a summary one and relies upon the detailed statement of facts made in the Magistrate Judge's estimable 59-page Report, which need not be repeated. While the Court does not adopt that Report in some significant parts, it esteems the Magistrate Judge for her fine work on this important habeas matter.

may or may not have been accurate or reflective of the victim's case). There was no physical evidence to corroborate the accusation since the accusation was made months after the event. There was also testimony that the accusation was made due to parental discipline and as a means to accomplish the victim's objective to live with the friend. The victim's mother further testified that the friend acted inappropriately toward the victim, including by supplying the victim with liquor on occasion.

The jury who heard the case believed the victim and her graphic description of the sexual assault and disbelieved the Petitioner. It convicted Petitioner of third degree criminal sexual conduct and did so even though there were many inconsistencies and causes to question both the victim and the friend's testimony. The trial court then sentenced Defendant to a term of 6-15 years incarceration.[2]

Defendant both appealed his sentence and sought relief due to ineffective assistance of counsel. Ultimately, the trial court (the Leelanau Circuit Court) denied relief following a *Ginther*[3] hearing and found that there had been no Sixth Amendment violation. The Michigan Court of Appeals then reversed that determination and remanded to the trial court for the purpose of retrial. The Court of Appeals' judgment, however, was reversed by the Michigan Supreme Court, which affirmed the Circuit Court's decision. *People v. LeBlanc*, 640 N.W.2d 246 (Mich. 2002).

Petitioner, through counsel, then filed the instant section 2254 Petition asserting seven habeas claims as specified on pages 23 and 24 of the Report, which claims have been sufficiently

---

[2]The trial court apparently believed the minor, as well, because it imposed a drastic sentence far in excess of the advisory sentencing range usually applicable to such offenses. (Sentencing Tr., 51.)

[3]Referring to the hearing process mandated in *People v. Ginther*, 212 N.W.2d 922 (1973).

exhausted. The ineffective assistance of counsel claim (claim I), includes several sub-claims concerning various actions and inaction by trial counsel.

## LEGAL STANDARDS

Under 28 U.S.C. § 636, objections to a magistrate judge's report and recommendation are afforded *de novo* review. *See Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986).

Under 28 U.S.C. § 2254(d), the writ may not be granted unless the state court's adjudication,

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States, or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

This portion of the statute was interpreted by the United States Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), which said:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 512-13 (setting forth the decision of the Supreme Court as to Part II). *See also Yarborough v. Alvarado,* 541 U.S. 652, 663-64 (2004) (stating, with regard to "reasonableness," general rules are to be applied generally and specific rules specifically).

**LEGAL ANALYSIS**

**A.  Respondent's Objections**

As stated in the Report, the Magistrate Judge recommended that relief be granted as to claim I concerning the failure of trial counsel to: (1) present the testimony of a defense expert witness (Dr. Barbara Jones-Smith); (2) introduce evidence of letters written by the victim; and (3) question potential jurors as to possible racial bias.  The Magistrate Judge rejected the remainder of Petitioner's claims, including other arguments premised on ineffective assistance of trial counsel.  Respondent has timely objected.

Of course, the focus of any inquiry into ineffective assistance of counsel is guided by the Supreme Court's words in *Strickland v. Washington*, 466 U.S. 668 (1984).  Under *Strickland*, to establish ineffective assistance of counsel, the petitioner must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Id.* at 687.  In gauging counsel's performance, the Supreme Court emphasized that,

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to secondguess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. . . .  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy."

*Id.* at 689 (citations omitted).  In determining prejudice, the courts are to determine whether, "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine

confidence in the outcome." *Id.* at 694. *See also O'Hara v. Wigginton*, 29 F.3d 823, 828 (6th Cir. 1994).

Upon reflection of each of these areas of ineffective trial strategy cited by the Magistrate Judge, this Court cannot discern any "unreasonable application" of Supreme Court precedent, particularly the *Strickland* precedent. *Strickland* intended to preserve a wide arena for counsel to make strategic trial decisions and to prevent hindsight decisions from interfering with such discretion. This is particularly so since the trial attorney and the trial judge, as opposed to a later reviewing court, are more likely to appreciate the actual trial dynamics (since they observed the head bobs, grimaces and twisted smiles of jurors) and the feelings and inclinations of jurors in a particular locale.

In terms of the examples of ineffective assistance listed by the Magistrate Judge, each of them (in this Court's judgment) bespeaks an instance of legitimate trial strategy. The trial strategy did not succeed; however, the alternatives recommended each carry risks that may or may not have benefitted Petitioner in the eyes of the jury. In light of the admonition of *Strickland* that legitimate strategies be allowed and the distorting effect of hindsight be ignored, this Court cannot discern ineffective assistance by trial counsel.

Item one on the list of supposed faults was the failure to present a defense expert–Dr. Barbara Jones-Smith to rebut the prosecution's expert witness–Ms. Barbara Cross. Defense counsel chose not to "play" the expert game in order to preserve a simple and straight-forward argument concerning such expert testimony–*i.e.*, the expert was not at the scene of the alleged crime and cannot tell you what happened because she simply does not know. Defense counsel believed that calling a defense expert would only lend credibility to the notion that such experts can assist a jury

in determining truthfulness and, in counsel's judgment, if the case became a "battle of the experts," the defense would lose. (Hearing Tr., Mar. 1, 2000, 51.)

Against defense counsel's experience, the Magistrate Judge posits that Dr. Jones-Smith should have been utilized to: (a) point out that the prosecution expert was not in fact a member of the Association for the Treatment of Sexual Abusers ("ATSA"); and (b) contradict the prosecution's expert witness about typical responses of sexual abuse victims.

Regarding the first subject, as pointed out by the Deputy Attorney General, it is not likely that Smith could have been used for effective cross-examination of Cross on the point of Smith's credentials at the time of trial. Smith did testify that she knew that Cross was not an ATSA member at the time of trial. However, she also testified that she only discovered the false ATSA attribution when she reviewed the trial transcript and only then confirmed the false attribution by contacting ATSA's executive director, Connie Isaac, who provided a letter dated May 6, 1999 to the effect that Cross was not a member. In the Court's judgment, this subject of cross-examination is a tempest in a teapot. The jury would have cared little over a single professional group membership where Ms. Cross had other and more compelling professional qualifications and experience. Furthermore, one must ask the question of how Dr. Jones-Smith could have been used to bring forth this point. Her testimony about another's group membership was drawn from Connie Isaac and arguably would have been inadmissible as outside her personal knowledge and based upon hearsay. For those reasons, the testimony, had it been permitted, would also have been viewed as unpersuasive testimony regarding an unimportant detail.

As for the second point, the expert testimony of Dr. Jones-Smith on "general tendencies" would not have necessarily assisted the defense. She would have been compelled to agree with

some of Ms. Cross' testimony about the typical responses of sexual assault victims.[4] (Hearing Tr., Nov. 2, 1990, 71-72.) Given such agreement, it was well within the parameters of legitimate trial defense to not present such testimony.

Overall, the choices made by defense counsel concerning the presentation of expert testimony were plausible strategic decisions. It was not an "unreasonable application" of *Strickland* for the trial court or Michigan Supreme Court to apply *Strickland* in this manner.

Item two of defense errors is a set of six victim letters (Def. Exs. 9-14, App. A-45 to A-73) which were not admitted at trial. This is a curious error to posit for several reasons. First of all, during the *Ginther* hearings, Petitioner's counsel failed to even introduce these letters, though the letters were referenced. (Hearing Tr., Nov. 2, 1999, 181-82 & Ex. Index.) Nevertheless, the argument made is that the failure to present these letters prejudiced the defense because the information in the letters was valuable and not covered by other trial testimony. To put this argument into perspective, one must understand what occurred during trial. Forty-six victim letters were discovered and reviewed by defense counsel before trial. There was a failure by the defense to disclose some letters to the prosecution and the prosecution resisted the presentation of the belatedly disclosed letters. Nevertheless, the prosecution and defense ultimately agreed that six pages of the victim's letters, trial Exhibits AA and AB, which showed victim animus and a motive for revenge would be admitted, *see* Trial Tr., Vol. II, 436, Trial Tr., Vol V, 1075, but others would not be presented. Because of the letters which were introduced and the otherwise extensive cross-

---

[4]The argument that the defense expert would have contradicted the prosecution witness' testimony involving the use of statistics assumes that defense counsel did not do so effectively without Ms. Smith. The record supports that Ms. Cross was effectively tested by defense counsel on this point during expert *voir dire*. (Trial Tr., Aug. 26, 1998, 547-53.)

examination of the victim, the trial court, after the *Ginther* hearing, found no constitutional violation. (*See* Circuit Ct. Op., Pet'rs App. A-139.)

Upon review of the record, the Court cannot say that the trial court's findings were an "unreasonable application" of federal law. While making disclosure mistakes is not defensible, the state court's conclusion that the additional letters would not have added much to the cross-examination is a reasonable one.[5] The subjects of cross-examination (hatred of the father, revenge for discipline, drinking and the desire to live with the friend) were conveyed adequately in the victim cross-examination and the two letters admitted. In light of such evidence, the Court finds that the trial court's conclusion that Petitioner did not suffer prejudice by the failure to present additional letters is a reasonable application of federal law.

Item three is defense counsel's treatment of jury voir dire on the subject of race. Defense counsel made a conscious decision to treat the instant case as not directed toward race, and did not conduct a jury voir dire based on attitudes toward race. The argument by Petitioner is that discrimination against Native Americans is pervasive in Michigan and, therefore, Petitioner (a Native American) was likely prejudiced by the failure of defense counsel to inquire of juror attitudes toward race, especially since the victim was white. The unstated premise of this argument is that

---

[5]On pages 37 through 40 of the Report, the Magistrate Judge gives a prolonged discussion of the weakness of the prosecution case (discussing the failure of the witness to correctly identify the time of sexual assault and Petitioner's alibi for certain times). The discussion is made for the purpose of providing a context for the cross-examination issue, but is worded in a way to suggest that the Magistrate Judge was assessing a *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (sufficiency of the evidence) Due Process challenge to the verdict. This discussion is peculiar for two reasons: first, no *Jackson v. Virginia* challenge is made by Petitioner; second, even if one was made, the challenge would fail because the victim's testimony, though perhaps sometimes confused, was sufficient direct testimony to support the conviction. *See, e.g., United States v. Forrest*, 17 F.3d 916, 918 (6th Cir. 1994).

a jury voir dire directed toward attitudes about race would have discovered jury prejudice and permitted a more effective use of peremptory challenges. This is an intriguing possibility, but not much more than that. It was equally likely, if not more so, that a jury voir dire based on racial attitudes in a case in which there was no testimony that the crime or defense was related to race would have been perceived by a jury as an implicit and illicit request for special racial treatment. *See Jacobs v. Horn*, 395 F.3d 92, 118 (3d Cir. 2005) (holding that it was professionally reasonable to not conduct a jury voir dire on the issue of race in a criminal case in which race did not play an issue) (citing cases); *Daniels v. Burke*, 83 F.3d 760, 766 (6th Cir. 1996) (same); *see also Ristaino v. Ross*, 424 U.S. 589, 597-98 (1976) (holding that *voir dire* questioning concerning race in a non-capital case is constitutionally mandated only in "special circumstances"); *Rosales-Lopez v. United States*, 451 U.S. 182 (U.S. 1981) (following *Ristaino*); *United States v. Love*, 219 F.3d 721, 725 (8th Cir. 2000) (concurring opinion); *Carter v. Braunstein*, 279 N.W.2d 596, 597 (Mich. Ct. App. 1979); *cf. Mu'min v. Virginia*, 500 U.S. 415, 424-25 (1991) (stating that jury voir dire regarding race is required in a capital case in which an African American is charged with a violent murder of a white woman, but the manner of voir dire is left to the trial court's discretion).

The delicate balance that must be struck with a jury to preserve an advocate's credibility is nowhere more crucial than in the area of race. While certain crimes are directly related to race (racial assaults, racial rioting, murders by persons of a different race from the victim) the present crime was not one of them. The present crime was one which a reasonably skilled attorney, such as defense counsel, might legitimately believe that Petitioner's interests were best served by ignoring the issue entirely so as not to interject race into the case. In light of such, defense counsel's performance was not constitutionally deficient and the interpretation of the trial court, finding no

constitutional violation, was a reasonable construction of federal law as so far determined by Supreme Court precedent.[6]

Furthermore, the Magistrate Judge failed to make an express finding concerning the seventh claim asserted by Petitioner–cumulative error. However, it may be inferred from her Report that she found it unnecessary to make any such finding because the other errors she determined, in her judgment, required relief. Since the Court has determined that Petitioner is not entitled to habeas relief due to the errors identified by the Magistrate Judge, the Court also concludes that Petitioner is not entitled to habeas relief because of "cumulative error" under *Strickland*. The failure of the state court to afford relief due to cumulative error was a reasonable application of federal law.

### B. Petitioner's Objections

Petitioner's Objections are brief in character and concern four subjects: (1) failure of defense counsel to object to rebuttal testimony; (2) failure of defense counsel to object to "syndrome" expert testimony; (3) failure of defense counsel to object to "prior consistent statement" testimony; and (4) failure of the Magistrate Judge to find that the absence of jury *voir dire* on the issue of race violated the Due Process Clause.

As to the rebuttal testimony, the prosecution presented the testimony of James Loonsfoot to the effect that Petitioner falsified a time sheet in 1996 (prior to the offense conduct). (Trial Tr., Vol.

---

[6]This Court would applaud an expansion of the rule stated in *Mu'min* to apply to not only capital cases involving cross-racial violence and non-capital cases involving "special circumstances," but to all cases of serious cross-racial violence regardless of whether race was casually related to the violence. However, the Supreme Court would have to overrule or seriously modify *Ristaino* and *Ham v. South Carolina*, 409 U.S. 524 (1973) to reach that result, which it has not done. In particular, the Supreme Court's decision in *Turner v. Murray*, 476 U.S. 28, 50-51 (1986) noted that a different rule applied in capital cases (no showing of "special circumstances") because the jury exercises sentencing discretion, which is not true in non-capital cases.

IV, at 1009-11.) The testimony was presented because Petitioner referred to his own time records to attempt to establish an alibi concerning the time of the offense. (*See* Trial Tr., Vol. IV, 950-58.) The Michigan Supreme Court held that this was not a "collateral" matter and the rebuttal testimony properly related to the alibi defense. This determination itself is one of state law which cannot support habeas relief. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Moreover, given the Michigan Supreme Court's determination of the admissibility of the evidence, the state court's determination that defense counsel did not violate *Strickland* in failing to object was a reasonable application of a federal law.

As to the "syndrome" testimony argument, this argument misstates Barbara Cross' testimony which related to "typical responses" of sexual abuse victims as opposed to "symptoms" of sexual abuse. (Trial Tr., Vol II, 563-72.) This kind of testimony is specifically permitted in sexual abuse cases. *People v. Peterson*, 537 N.W.2d 857, 868 (Mich. 1995) (holding that "[a]n expert may testify regarding typical symptoms of child sexual abuse for the sole purpose of explaining a victim's specific behavior that might be incorrectly construed by the jury as inconsistent with that of an abuse victim *or* to rebut an attack on the victim's credibility.") Moreover, its admissibility is a matter of state law not subject to habeas relief. *Estelle*, 502 U.S. at 67-68. Further, the tactics chosen regarding such testimony, including the failure to object, were well within the parameters of *Strickland*.

As to the "prior consistent statement" testimony, Petitioner's argument is that testimony by Lana Camuso and Rosa Breneman (that the victim told them that Petitioner committed the abuse) was improper hearsay evidence. As noted by the Magistrate Judge, even if that testimony was not admissible under the hearsay exception for a prior consistent statement offered to rebut an implied

charge of recent fabrication, the testimony was nevertheless admissible for the non-hearsay purpose of explaining the course of the state investigation. As such, the failure to object to such testimony was well within the bounds permitted by *Strickland*.

As to the final argument, the Court has already discussed the Supreme Court's Due Process/jury voir dire case law in the context of the *Strickland* standards. Those cases did not mandate a jury voir dire on racial attitudes on the facts of the instant case. Therefore, relief is unwarranted since the state court's application of federal law is reasonable.

**CERTIFICATE OF APPEALABILITY**

Pursuant to 28 U.S.C. § 2253, the Court must also assess whether to grant the issuance of a certificate of appealability to Petitioner. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002) (holding that § 2253 analysis may be done at the time the claim for relief is determined). Under the statute and the United States Supreme Court's determinations in *Slack v. McDaniel,* 529 U.S. 473, 483-84 (2000) and *Barefoot v. Estelle,* 463 U.S. 880, 893 & n.4 (1983), a certificate is to be issued if the resolution of the petition is debatable among reasonable jurists or adequate to deserve encouragement for some other reason. Furthermore, the analysis of the sufficiency of the claims must be individually directed to the substance of the constitutional claims asserted. *Murphy v. Ohio*, 263 F.3d 466, 466-67 (6th Cir. 2001); *Porterfield v. Bell*, 258 F.3d 484, 486 (6th Cir. 2001).

As the history of the suit makes plain, the record of this case is one which prompts ready disagreement between reviewing courts and jurists. Therefore, and in light of the strength of the issues argued by Petitioner, a certificate of appealability will be granted on the following issues: Claim I (ineffective assistance of counsel, Sixth Amendment) limited to the issues of whether the following non-action by defense counsel constituted ineffective assistance of counsel: a. failure to

present the testimony of Dr. Jones-Smith (a competing expert); b. failure to introduce additional victim letters; and c. failure to conduct jury voir dire on the issue of race; Claim II (Due Process) limited to the issue of whether the failure to conduct jury voir dire on the issue of race violated the Due Process Clause; and Claim VII (ineffective assistance of counsel, Sixth Amendment) limited to the issue of whether any errors associated with the above certified claims when viewed together constitute "cumulative error" warranting habeas relief under the Sixth Amendment.

In light of these findings, the Court also declines to grant bail, but will urge the Court of Appeals to act promptly on appeal.

## **CONCLUSION**

In accordance with this Opinion, a Final Order shall issue granting Respondent's Objections, denying Petitioner's Objections, adopting the Report and Recommendation in part and rejecting it in part, and certifying some but not all of the claims asserted in the Petition.

Dated in Kalamazoo, MI:  /s/Richard Alan Enslen
September 12, 2005  Richard Alan Enslen
 Senior United States District Judge